```
                                                            RECEIVED CLERK'S OFFICE
              IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF SOUTH CAROLINA           2008 AUG -6  A 10: 37

                                                            DISTRICT COURT
                                                            SOUTH CAROLINA
Albert Nathaniel Wright,        )    C. A. No. 2:07-2515-JFA-RSC
#254430,                        )
                                )
              Plaintiff,        )
                                )
         -versus-               )    REPORT AND RECOMMENDATION
                                )
Jon Ozmint; Stan Burtt; Adrian  )
Martell; R. Reeves; Robert      )
Ward; Fred Thompson, Thierry    )
Nettles; Tim B. Roof; Gilbert   )
Emrhein, NFN Williams;          )
J. Powell; Yvette Blowe;        )
Dr. Hutchinson; Dr. Smith;      )
Dr. Blake; Nurse D. Austin;     )
Nurse D. Norwood; Nurse         )
Bazzille; Nurse C. Felder;      )
Dr. Babbs,                      )
                                )
              Defendants.       )
```

This civil rights action pursuant to 42 U.S.C. § 1983[1]

brought by a state prisoner proceeding pro se and in forma

pauperis, is before the undersigned United States Magistrate

---

[1] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of Section 1983, titled a civil action for deprivation of rights reads in relevant portion: the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. 42 U.S.C. § 1983.

1

Judge for a report and recommendation on the defendants' summary judgment motion. 28 U.S.C. § 636(b).

The plaintiff, Albert Wright, filed his complaint on July 23, 2007, his first amended complaint on October 1, 2007, and his second amended complaint on November 8, 2007. He named as defendants Jon Ozmint, the Director of the South Carolina Department of Corrections (SCDC); Stan Burtt, the Warden of the Lieber Correctional Institution (LCI); Adrian Martell, a major at LCI; R. Reeves; Robert Ward; Fred Thompson, Associate Warden of LCI; Thierry Nettles, a major at LCI; Tim B. Root, Canteen Supervisor at LCI; Gilbert Emrhein, officer at LCI; NFN Williams, officer at LCI; J. Powell, Medical administrator at LCI; and Yvette Blowe, a mailroom employee at LCI. Ozmint, Burtt, Martell, Reeves, Ward, Thompson, Nettles, Roof, Emrhein, Powell, Blowe, Blake, Austin, Norwood, and Babbs have been served, have answered the complaint, and have moved for summary judgment. Wright alleges that he has not been provided appropriate medical care and treatment for a Venous Statis Ulcer, that he was denied rights when defendant Warden Burtt denied the grievance he filed regarding his medical care, and that he was not treated properly when he was found to have violated prison rules in not respecting an officer. Wright alleged these action were violative of state and federal law as well as prison policies. Wright seeks $4,000,000.00 in damages from each defendant and equitable

2

relief. Wright has not served any discovery requests on any defendant.

The defendants who have been served filed a motion for summary judgment along with the plaintiff's authenticated medical records and the sworn affidavits of Nurse Sally Blake and Warden Stan Burtt. Plaintiff was provided copies of the defendants' motion and exhibits and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). On June 26, 2008, Plaintiff filed unverified pleadings in opposition to the motion in which he submitted no evidence but indicated that the court should provide an independent medical expert to review the defendant's evidence and to opine whether he was the victim of malpractice. Thereafter, on July 3, 2008, the defendants replied to the plaintiff's opposition. Hence, it appears consideration of the motion is appropriate.

### SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322.

The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled

4

to judgment in his favor. Id., 477 U.S. at 252.

### LAW RELATED TO MEDICAL CARE AFFORDED PRISONERS

The eighth amendment prohibits the infliction of cruel and unusual punishment on one who has committed a crime. See, U.S. Const. Amend. VIII.  Accordingly, a prisoner makes out a claim under the eighth amendment if he can establish that the prison medical personnel responsible for his care were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976); Amos v. Maryland Dep't of Pub. Safety & Correctional Servs., 126 F.3d 589, 610 (4th Cir. 1997), vacated in part on other grounds, 118 S.Ct. 2339 (1998).  These requirements go beyond even a showing of negligence, and requires Plaintiff to establish the defendants acted with an indifference as would "offend evolving standards of decency." Id.

In a § 1983 claim, whether a medical provider has been deliberately indifferent to a prisoner's serious medical need is a two part inquiry.  First, the prisoner must show that he was deprived of an objectively serious human need. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998).  Second, the plaintiff must demonstrate that the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991).

Farmer v. Brennan, 511 U.S. 825 (1994) and cases interpreting Farmer, make clear that general knowledge of facts

5

creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific serious risk of harm confronting the inmate. See, Farmer, 511 U.S. at 837, 114 S.Ct. at 1978-79 (stating that "the official must both be aware that a substantial risk of serious harm exists, and he must also draw the inference").

Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979. Prison officials must know of and disregard an objectively serious condition, medical need, or risk of harm. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844, 114 S.Ct. at 1982; see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm).

In Estelle v. Gamble, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken. The Supreme Court pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." Id. at

105. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988); Cf. Whitley v. Albers, 475 U.S. 312, 320 (1986)(a state's responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities).

Likewise, constitutionally, state prisons are not required to furnish prisoners the best of care, only reasonable care. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). The constitution also does not guarantee a prisoner the treatment of his choice. Jackson v. Fair, 846 F.2d 811 (1st Cir. 1988). The mere failure to treat all medical problems to a prisoner's satisfaction, even if actual medical malpractice is involved, is insufficient to support a claim under § 1983. Sosabee v. Murphy, 797 F.2d 179 (4th Cir. 1986). Even if plaintiff could establish negligence in his medical treatment, his cause of action would be in negligence against the defendants. Section 1983 does not provide for a remedy for violation of state law, but only for violations which rise to the level of unconstitutional deprivation. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, supra. Negligence simply is not actionable

under 42 U.S.C. § 1983. <u>Daniels v. Williams</u>, 474 U.S. 327 (1986).

## RESPONDEAT SUPERIOR

It is settled that the doctrines of vicarious liability and respondeat superior do not apply in § 1983 actions. <u>Vinnedge v. Gibbs</u>, 550 F.2d 926 (4th Cir. 1977). A defendant cannot be held liable for the acts of others without specific wrongdoing by that defendant. <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978).

## QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials who are carrying out discretionary functions from personal monetary liability in cases where their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982). In <u>Cleavinger v. Saxner</u>, 474 U.S. 193 (1985), the United States Supreme Court upheld the extension of qualified immunity to prison officials. In discussing the issue of qualified immunity, the Court of Appeals for the Fourth Circuit stated that:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or

8

> abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 118 S.Ct. 89 (1995).

In addressing the defense of qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Lane, 526 U.S. 286, 290 (1999). If the court initially determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998).

## DISCUSSION

A review of the record and relevant case law reveals that the defendants' motion for summary judgment should be granted, the named defendants who have not been served be dismissed, and this action be characterized as a "strike" under the Prison Litigation Reform Act (PLRA).

A review of Plaintiff's complaint reveals that no defendant,

9

save Burtt, was alleged to have done anything whatsoever to the plaintiff. No defendant's name, except Burtt's, is included anywhere in the complaint except in the plaintiff's list of defendants. To state a civil rights claim, a plaintiff must allege that he sustained the deprivation of a right, privilege, or immunity secured by the federal constitution or other federal law traceable to a named defendant's allegedly unlawful conduct and likely to be redressed by the plaintiff's requested relief. Allen v. Wright, 468 U.S. 737, 751 (1984). Therefore, all defendants except Burtt are subject to summary dismissal on this basis alone.

Warden Burtt is entitled to judgment as a matter of law. Read liberally, Plaintiff's complaint may seek to impose liability on the warden because the warden is the head of the prison where the alleged deprivations occurred. However, it is settled that the doctrines of vicarious liability and respondeat superior do not apply in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). Warden Burtt cannot be held liable for the acts of others without specific wrongdoing by him. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).

The sole specific wrongdoing which plaintiff attributes to Burtt is that Burtt denied Plaintiff's request to be examined and treated by a physician who specializes in vascular statis ulcers. The uncontested evidence as presented in Burtt's sworn affidavit

is that upon due inquiry into Plaintiff's request, he satisfied himself that the plaintiff was being properly attended and treated by medical professionals. Warden Burtt deferred to medical professionals concerning the nature, severity, and proper treatment of the plaintiff's condition. The warden is not a medical professional as therefore he had a right to rely on the medical expertise of the professionals providing inmate care. See, Miltier v. Boern, 896 F.2d 848, at 854 (4th Cir. 1990). The medical records and the sworn affidavit of Nurse Sally Blake are fully consistent with the warden's affidavit and demonstrate that the plaintiff's medical treatment is not constitutionally deficient[2]. Warden Burtt is entitled to judgment as a matter of

---

[2] Defendant Sally Blake is a Family Nurse Practitioner who was, at times relevant to this action, employed by the SCDC. Her affidavit recites the plaintiff's extensive medical and surgical treatment within and outside SCDC during his incarceration. When Plaintiff entered SCDC in June 2003, he had a pre-existing history of a broken ankle in the 1990s, which had been complicated by formation of a deep venous thrombosis (DVT), a condition in which his vein occluded. He had already been diagnosed with chronic venous insufficiency (CVI), with venous stasis ulcerations already present. CVI means that the plaintiff had lost the proper function of the leg veins that would normally carry blood back to his heart from his lower extremities, causing the skin to lose elasticity and ulcerate. CVI treatment was immediately started when he entered SCDC, and throughout his incarceration to date. He had 241 visits to physicians, nurse practitioners, and nurses, frequent, sometimes daily, dressing changes, visits to specialty vascular and surgical clinics, wound cultures and other medical tests, and a plethora of medical notes regarding conditions and treatment. He was prescribed several courses of antibiotics, including ciprofloxacin, clindamycin, and rifampin. He was provided insoles, stasis pads, shoe lifts, and compression stockings, and was accommodated, at times of inability, with Meal on Wheels passes and "no work" passes.

law.

As an alternative and additional ground for dismissal, it appears that the defendants are entitled to qualified immunity from suit. The test of such immunity is whether these defendants, in performing discretionary functions, have engaged in conduct violating clearly established constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982). The defendants correctly submit that none of their conduct toward the plaintiff, nor even the conduct alleged without specificity as to defendant, would constitute a violation of clearly established constitutional rights, and they are entitled to immunity.

Lastly, the instant action is wholly without merit, and should be considered frivolous and malicious within the meaning of the PLRA[3]. Therefore, it is further recommended that it be

---

Additionally, he had other medical treatment at an outside hospital, including surgery to remove the defective vein and treatment for adverse reactions to prescribed antibiotics. Def. Ex. 2, Affidavit of Sally Blake, F.N.P.; Def. Ex. 4, authenticated medical record excerpts.

[3] Section 804 of the PLRA which amended section 1915(g), reads as follows: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

12

counted as a "strike" against the plaintiff. See 28 U.S.C. § 1915(g).

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendants' motion for summary judgment be granted, that all remaining defendants be dismissed for failure of service, and that the action be deemed a "strike" against the plaintiff.

Respectfully Submitted,

*/s/ Robert S. Carr*

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
August ~~July~~ 6, 2008

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).